542 A.2d 391

Joel C. KAUFMAN t/a Joel C. Kaufman
Construction Company

v.

Bonnie A. MILLER.

Joel C. KAUFMAN t/a Joel C. Kaufman
Construction Company

v.

Charles B. MILLER, et al.

Nos. 1489, 1490, Sept. Term, 1987.

Court of Special Appeals of Maryland.

June 13, 1988.

Thomas E. Hickman, Westminster, for appellant.

Patrick A. O'Doherty and Mark B. McCoy, Baltimore, for appellees.

Argued before ROBERT M. BELL, WENNER and POLLITT, JJ.

ROBERT M. BELL, Judge.

These appeals by Joel C. Kaufman, t/a Joel C. Kaufman Construction Company, appellant, from judgments of the Circuit Court for Carroll County dismissing appellant's complaints to enforce Mechanics Lien against Bonnie A. Miller and against Charles B. Miller and Bonnie A. Miller, appellees, present but one question: Is a contractor entitled to maintain an action to establish a Mechanics Lien? Our answer to that question is "yes". Accordingly, we will reverse and remand for further proceedings.

The well-pleaded allegations of fact contained in appellant's complaints against appellees disclose the following.[1] Appellant entered into separate contracts with appellee Bonnie A. Miller and appellee Charles B. Miller[2] for the construction of two separate residences on two adjacent lots of real estate owned by appellee Bonnie A. Miller. Each appellee agreed to pay appellant a specified amount for his work. When he was not paid, despite having completed the

---

1. The appropriate standard of review of the grant or denial of a motion to dismiss is whether the well-pleaded allegations of fact contained in the complaint, taken as true, reveal any set of facts which would support the claim made. *Flaherty v. Weinberg,* 303 Md. 116, 135–36, 492 A.2d 618 (1985); *Ungar v. State,* 63 Md.App. 472, 479, n. 6, 492 A.2d 1336 (1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986).

2. This is a consolidated appeal spawned by separate actions brought by appellant against Bonnie A. Miller (Appeal No. 1489) and against Charles B. Miller and Bonnie A. Miller (Appeal No. 1490).

work, as well as having performed additional work requested by each appellee, appellant filed complaints to establish and enforce Mechanics' Lien against both appellees. Each complaint contained the express acknowledgement "[t]hat [appellant] is a Contractor as defined in Section 9–101 of the Real Property Article of the Annotated Code of Maryland...."

Appellees were served with, and filed answers to, the complaints. In addition to admitting that appellant was a contractor and that they had a contract with him, each appellee interposed a motion to dismiss for failure to state a cause of action upon which relief can be granted. They offered several bases in support of these motions. Pertinent to this appeal, they argued that appellant, as a contractor, as opposed to a subcontractor, was not entitled to relief pursuant to the Mechanics' Lien law. It was on this basis that the lower court, after argument, dismissed appellant's actions.

■ The Mechanics' Lien law in effect when the contracts at issue were made and appellant's complaints were filed was codified in Maryland Real Property Code Ann. §§ 9–101–114 (1981 Replacement Volume, 1987 Cumm. Supp.). An analysis of its provisions renders ineluctable the conclusion that its benefits extend to contractors as well as to subcontractors.

The definitions of "contractor" and "subcontractor" are contained in § 9–101:

(d) Contractor.—"Contractor" means a person who has a contract with an owner.

(g) Subcontractor.—"Subcontractor" means a person who has a contract with anyone except the owner or his agent.

The term "contract", on the other hand, is defined as "an agreement of any kind or nature, express or implied, for doing work or furnishing material, or both, for or about a building as may give rise to a lien under this subtitle." Section 9–101(c). These definitions must be considered in

light of § 9–102(a), Property subject to lien. That section provides:

(a) Buildings.—Every building erected and every building repaired, rebuilt, or improved to the extent of 25 percent of its value is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building, including the drilling and installation of wells to supply water, the construction or installation of any swimming pool or fencing, the sodding, seeding or planting in or about the premises of any shrubs, trees, plants, flowers or nursery products, and the grading, filling, landscaping, and paving of the premises.

Reading the definitions in tandem with § 9–102(a), it is clear that, prerequisite to the establishment of a lien on a building on which work has been done and/or materials furnished, there must have been a contract for that work and/or for those materials. Furthermore, it is clear that the purpose of the lien is to ensure that those doing the work or furnishing the materials are paid pursuant to the contract under which they performed. Neither the language of § 9–102(a) nor the definitions previously cited suggests that a contractor may not himself perform the work or furnish the material and thus fall within the protection of the statute. In fact, common sense suggests that one who contracts directly with the owner may, and often does, perform the work and furnish the materials required by the contract.

That the Mechanics' Lien law applies to contractors is made even clearer by analysis and comparison of §§ 9–104 and 9–105. Section 9–104 is captioned, "Notice to Owner by Subcontractor", and provides, in pertinent part:

(a) Notice Required to entitle subcontractor to lien.—(1) A subcontractor doing work or furnishing materials or both for or about a building other than a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle

unless, within 90 days after doing the work or furnishing the materials, the subcontractor gives written notice of intention to claim a lien substantially in the form specified in subsection (b) of this section.[3] (2) A subcontractor doing work or furnishing materials or both for or about a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 90 days after doing work or furnishing materials for or about that single family dwelling, the subcontractor gives written notice of an intention to claim a lien in accordance with subsection (a)(1) of this section and the owner has not made full payment to the contractor prior to receiving the notice.

\* \* \* \* \* \*

(f) Payments by owner to contractor after notice; limitation on lien against certain single family dwellings.— (1) On receipt of notice given under this section, the owner may withhold, from sums due the contractor, the amount the owner ascertains to be due the subcontractor giving the notice.

(2) If the subcontractor giving notice establishes a lien in accordance with this subtitle, the contractor shall receive only the difference between the amount due him and that due the subcontractor giving the notice.

(3) Notwithstanding any other provision of this section to the contrary, the lien of the subcontractor against a single family dwelling being erected on the land of the owner for his own residence shall not exceed the amount by which the owner is indebted under the contract at the time the notice is given.

Section 9–105, on the other hand, is captioned simply, "Filing of Claims", and it provides:

(a) In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court for the county where the land or any part of

---

3. Subsection (b) relates to the form and procedures for giving notice to the owner.

the land is located within 180 days after the work has been finished or the materials furnished. The proceedings shall be commenced by filing with the clerk, the following:

(1) A petition to establish the mechanics lien, which shall set forth at least the following:

(i) The name and address of the petitioner;

(ii) The name and address of the owner;

(iii) The nature or kind of work done or the kind and amount of materials furnished, the time when the work was done or the materials furnished, the name of the person for whom the work was done or to whom the materials were furnished and the amount or sum claimed to be due, less any credit recognized by the petitioner;

(iv) A description of the land, including a statement whether part of the land is located in another county, and a description adequate to identify the building; and

(v) If the petitioner is a subcontractor, facts showing that the notice required under § 9–104 of this subtitle was properly mailed or served upon the owner, or, if so authorized, posted on the building. If the lien is sought to be established against two or more buildings on separate lots or parcels of land owned by the same person, the lien will be postponed to other mechanics liens unless the petitioner designates the amount he claims is due him on each building.

(2) An affidavit by the petitioner or some person on his behalf, setting forth facts upon which the petitioner claims he is entitled to the lien in the amount specified; and

(3) Either original or sworn, certified or photostatic copies of all material papers or parts thereof, if any, which constitute the basis of the lien claim, unless the absence thereof is explained in the affidavit.

\* \* \* \* \* \*

As these sections make clear, a subcontractor, *i.e.*, one who has a contract with someone other than the owner, is expressly covered by the Mechanics' Lien law. A subcontractor, if he is to establish a lien, must notify the owner within 90 days after completing work or furnishing materials of his intention to do so. Not only is this made clear in § 9–104, but it is reiterated in § 9–105(a)(1)(b). Thus, while a subcontractor has an express right to establish a mechanics' lien, it is also clear that it is not only subcontractors who have that right.

This is especially important since the Mechanics' Lien law acknowledges only two categories of persons who may be entitled to a mechanics' lien: contractors and subcontractors. As we have seen, a person is not entitled to the establishment of a lien unless there is a contract for the performance of work and/or for the furnishing of material in connection with a project covered by the Mechanics' Lien law. That contract necessarily must be between the owner and the person who agrees to do the work and/or furnish the materials or between the contractor and another for work to be performed, and/or for materials to be supplied, in connection with the contract between the owner and the contractor. Consequently, in context, § 9–105 can only apply to a contractor; by its express terms, it excludes a subcontractor.

If this were not evidence enough that the Mechanics' Lien law contemplates actions by contractors to establish mechanics' Liens, we have received guidance from the Court of Appeals on this very point. In *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976), the Court of Appeals was presented with the question, "[w]hether Maryland's present mechanics' lien law is compatible with the due process clauses of Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution." 277 Md. at 18, 353 A.2d 222. Preliminary to addressing that issue, the Court explained how the Mechanics' Lien law operated and, as a result, if not by way of direct holding, then by way of strong dicta, made clear that

the provisions of the law applied to contractors as well as to subcontractors. The Court stated:

> Under the terms of the Maryland statute, a lien is created and attaches to property as soon as work is performed or materials are supplied, § 9–101(a), [present § 9–102(a)], and lasts until "the expiration of 180 days after the work has been finished or the materials furnished, although no claim has been filed for them [with the clerk of the court]." § 9–105 [present § 9–105] ... however, if a laborer or materialman is a subcontractor, meaning he did not directly contract with the property owner, he "is not entitled to a lien unless, within 90 days after furnishing the work or material, he or his agent gives notice in writing, ... to the owner ... of his intention to claim a lien". § 9–103(a) [present § 9–104(a)] ... The purpose of this § 9–103(a) notice is to inform the property owner that a lien may be claimed so that he, as authorized by § 9–104, [present § 9–104(f)(1)], "may retain from the cost of the building the amount which he ascertains to be due to the party giving notice." The statute further provides that if either a subcontractor (who gives the § 9–103(a) notice) or a general contractor has not been fully paid and desires to retain his mechanics' lien, he must within the 180 days prescribed by § 9–105(e) [present § 105(a)], file a claim containing specified information concerning the claim, § 9–105(c) [present § 9–105(a)(1)], with the clerk of the circuit court of the county where the property is located, at which time the lien will be recorded on a special "Mechanics' Lien Docket." § 9–105. (emphasis added; citations omitted)

277 Md. at 19–20, 353 A.2d 222. The Court used the term "general contractors" four additional times during the opinion. On each of those occasions, the context was such as clearly to indicate that general contractors are within the ambit, and entitled to the benefits, of the law. *See* 277 Md. at 31 and 37, 353 A.2d 222.

The Court of Appeals held that portions of the Mechanics' Lien law did not comport with procedural due process; it

held, however, that those portions which did not offend procedural due process could stand alone and were enforceable. The General Assembly responded to the *Barry Properties* decision by enacting emergency legislation repealing and reenacting the Mechanics' Lien law, with amendments. *See* 1976 Laws of Maryland, Chapter 349, effective May 4, 1976. For an analysis of the changes effected in the Mechanics' Lien law by this legislation, *see Tyson v. Masten Lumber & Supply,* 44 Md.App. 293, 295 n. 9, 295–299, 408 A.2d 1051 (1979). None of the changes affected the coverage of the law. Hence, the Court of Appeals' interpretation of the statute remains viable. *See Cabana, Inc. v. Eastern Air Control,* 61 Md.App. 609, 487 A.2d 1209, *cert. denied,* 302 Md. 680, 490 A.2d 718 (1985); *Jones v. J.H. Hiser Constr. Co.,* 60 Md.App. 671, 484 A.2d 302 (1984), in both of which, actions to establish a mechanics' Lien were successfully prosecuted by general contractors.[4]

We, of course, agree, as appellees argue, that the court has no power to extend the reach of the Mechanics' Lien law "to cases beyond its obvious designs and plain requirements". *Caton Ridge v. Bonnett,* 245 Md. 268, 272, 222 A.2d 853 (1967); *Giles v. First National Realty,* 238 Md. 203, 205, 208 A.2d 582 (1965). We do not agree, however, that the Mechanics' Lien law "does not expressly provide general contractors entitlement to relief...." Indeed, as must be clear from the foregoing, we think that just the opposite is true. Since this is the only argument made by appellees in rebuttal to appellant's position, which we have previously found to be meritorious, we will reverse the judgments of the Circuit Court for Carroll County and remand the cases to that court for further proceedings.

 Appellees have moved to dismiss appellant's appeals on the grounds that neither the Circuit Court nor this Court has subject matter jurisdiction to hear these cases. The

---

**4.** We vacated the judgment in *Jones,* to permit the trial court to determine if set-offs should be allowed against the liens to which we found the contractor entitled.

basis for this argument lies in Article 13 of the construction contracts, which, in pertinent part, provides:

13.2 All claims or dispute between the Contractor and the Owner arising out of, or relating to, Contract Documents or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

Appellees allege that, because no arbitration occurred and there was no agreement between the parties to waive arbitration, appellant's actions were not properly before the court.

This argument is presented for the first time on appeal. Since it was not raised below, the lower court did not consider or decide it. *See* Md.Rule 1085. Moreover, in addition to not raising the issue, appellees participated actively in the lower court, successfully maintaining the very position which is the heart of this appeal. Therefore, when considered in conjunction with appellant's filing of the within actions, their conduct may be interpreted, pursuant to the arbitration requirement, as "the parties mutually agree[ing] otherwise". In any event, notwithstanding the arbitration provision, the lower court, at all times, had fundamental jurisdiction to hear and decide the issue presented to it. See *Montgomery County v. McDonald,* 68 Md.App. 307, 313–316, 511 A.2d 560 (1986). This is so because:

"[j]uridically, jurisdiction refers to two quite distinct concepts: (i) the power of a court to render a valid [final judgment], and (ii) the propriety of granting the relief sought. *1 Pomeroy, Equity Jurisprudence* (5th ed. 1941), §§ 129–31". *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 334, 322 A.2d 539, 543 (1974) (quoting *Moore v. McAllister,* 216 Md. 497, 507, 141 A.2d 176, 182 (1958). Thus, it is only when the court lacked fundamental jurisdiction to render the judgment it did that there is an absence of authority in the court so as to

render its judgment a nullity. *First Federated Com. Tr. v. Comm'r, supra,* 272 Md. at 334, 322 A.2d at 543 ... On the other hand, "the question of whether it was appropriate to grant the relief merges into the final [judgment] and cannot therefore be successfully assailed for that reason once enrolled." *First Federated Com. Tr. v. Comm'r, supra.* The power possessed by a court to hear and determine disputes, including that which is inherent, is derived from applicable constitutional and statutory pronouncements. (Some citations omitted, emphasis in original)

*Stewart v. State,* 287 Md. 524, 526–27, 413 A.2d 1337 (1980). Because the court had fundamental jurisdiction in the cases, preservation of the issue of the propriety of its having exercised that jurisdiction required appellees to raise it below. Failure to do so was fatal—appellees may not now raise it for the first time here. The motions to dismiss appellant's appeals are denied.

JUDGMENTS REVERSED, CASES REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS. MOTION TO DISMISS APPEALS DENIED.

COSTS TO BE PAID BY APPELLEES.